# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C ~~2311~~ 8131 | **DATE** | 07/17/2001 |
| **CASE TITLE** | Crowe v. Joliet Dodge et al. | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

Defendants' motion to dismiss plaintiff's third amended complaint (doc. #32);
Plaintiff's petition for injunctive relief and declaratory judgment (doc. #26)

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference [held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial [set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs [by/agreement/pursuant to]
☐ FRCP4(m) ☐ General Rule 21 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the attached reasons, the Court **GRANTS** in part and **DENIES** in part the motion to dismiss (doc. #32) and **GRANTS** in part and **DENIES** in part the petition for injunctive relief and declaratory judgment (doc. #26).

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | JUL 18 2001 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | 44 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | courtroom deputy's initials | ED-7 FILED FOR DOCKETING  01 JUL 17 PM 4: 50  Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KEVIN CROWE<br>Plaintiff, | ) ) ) | CASE NO. 00 C 8131 |
| v. | ) ) ) | JUDGE WILLIAM J. HIBBLER |
| JOLIET DODGE and<br>UNION ACCEPTANCE CORP.<br>Defendants. | ) ) ) | **DOCKETED**<br>JUL 1 8 2001 |

## MEMORANDUM AND OPINION

Kevin Crowe ("Plaintiff") filed his Third Amended Complaint against Joliet Dodge ("Defendant

Joliet Dodge") and Union Acceptance Corporation ("Defendant UAC") arising out of Plaintiff's purchase

of an automobile through a financing contract. Plaintiff alleges violations of the Truth-in-Lending Act

("TILA"), 15 U.S.C. § 1602 *et seq.* (Counts I(1) and C)[1]; the Illinois Consumer Fraud and Deceptive

Business Practices Act ("ICFA"), 815 ILCS 505/2 *et seq.* (Counts II and D); rejection or revocation, 810

ILCS 5/2-721, 5/2-601 *et seq.* (Counts F, G and O); breach of implied warranty of merchantability under

the Magnuson-Moss Act, 15 U.S.C § 2310(d) (Count H); violation of the Federal Odometer Act,

specifically the disclosure requirements, 49 U.S.C. § 32101 *et seq.* (Counts I(I) and P); violation of the

Illinois Odometer Act, 625 ILCS 5/3-112.1(e) (Count J); violation of the Credit Services Organizations

Act ("CSOA"), 815 ILCS 605/1 *et seq.* (Count K); common law fraud under Illinois law (Count L);

ratification and acceptance of illegal conduct and/or fraud (Count M); and violation of the Illinois Sales

Finance Agency Act ("ISFAA"), 205 ILCS 660 *et seq.* (Count N). Further, with his complaint, Plaintiff

filed a petition for injunctive relief and declaratory judgment (doc.#26). Defendants filed the present

---

[1] The headings for the sixteen causes of action in the Plaintiff's complaint, the third
complaint filed in this matter, switch between roman numerals and letters and skip a fifth claim,
i.e. what would have been Count V or E. Needless to say, such sloppiness confuses an already
poorly drafted complaint.

1

motion to dismiss all counts and the petition, pursuant to Federal Rule of Civil Procedure 12(b)(6) (doc. #32). For the reasons noted herein, Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part. Plaintiff's petition is **GRANTED** in part and **DENIED** in part.

## MOTION TO DISMISS STANDARD

A motion to dismiss under Rule 12(b)(6) should test the sufficiency of the complaint rather than address the merits of the case. This Court must construe all allegations in the complaint in a light most favorable to the plaintiff, taking all well-pleaded facts and allegations within the complaint as true. *Bontkowski v. First Nat. Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993). Because Plaintiff's allegations are taken as true, Defendant must meet a high standard in order to have the complaint dismissed for failure to state a claim upon which relief may be granted. The allegations of a complaint should not be dismissed for failure to state a claim "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Hartford Fire Insurance Co. v. California*, 509 U.S. 764 (1993); *Sherwin Manor Nursing Center, Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994). This Court must construe the present pleadings liberally in compliance with the notice pleading provision of the federal rules. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993). However, this Court need not stretch the allegations beyond their sensible and reasonable implications. *Chan v. City of Chicago*, 777 F.Supp. 1437, 1440 (N.D.Ill.1991).

In reviewing a Rule 12(b)(6) motion to dismiss for failure to state a claim, this court's review is limited to the allegations contained in the pleadings themselves. However, documents incorporated by reference or attached to the pleadings as exhibits are considered part of the pleadings for all intents and purposes. Fed. R. Civ. P. 10(c). In addition, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Venture Associates Corp. v. Zenith Data Systems Corp.*, 987 F.2d 429, 431 (7th Cir. 1993).

2

## FACTS AND BACKGROUND

On September 6, 2000, Plaintiff purchased a 1997 Chevrolet Blazer from Defendant Joliet Dodge, pursuant to a financing credit agreement, i.e. the Retail Installment Contract ("RIC"). Defendant Joliet Dodge allegedly told Plaintiff the 14.95% finance rate was the best rate Defendant could obtain for Plaintiff for the vehicle. Plaintiff further alleges Defendant sold a limited warranty to Plaintiff with inconsistent representations and failed to give Plaintiff his written Truth in Lending disclosures in a timely manner. Defendant Joliet Dodge later transferred Plaintiff's consumer credit contract to Defendant UAC, a sales finance agency.

As part of the sale, Defendant Joliet Dodge provided Plaintiff with an odometer statement, which stated the vehicle's mileage. However, Defendant Joliet Dodge allegedly failed to disclose to Plaintiff the vehicle's certificate of title signed by the previous owner and did not ask Plaintiff to sign the odometer statement on the back of the title. Instead, Plaintiff alleges Defendant asked him to sign a power of attorney to complete the sale; later, Defendant Joliet Dodge allegedly obtained a new certificate of title for Plaintiff.

On September 7, Plaintiff discovered the vehicle's mileage figure is allegedly incorrect, with the actual mileage of the car being higher due to a defective odometer. Plaintiff informed Defendant Joliet Dodge of the error and malfunction on September 9 and attempted to reject and revoke acceptance of the vehicle, but Defendant refused to recognize this rejection or revocation. Soon after, Defendant Joliet Dodge allegedly explained to Plaintiff if a General Motors car dealer confirmed the odometer did not spin , then Defendant would honor Plaintiff's rejection or revocation of acceptance. Plaintiff complied with Defendant's offer and confirmed the odometer was broken; however, Defendant allegedly refused to take the car back, to cancel the RIC or to refund Plaintiff all of his money. Plaintiff wrote to Defendant UAC and explained the situation, but Defendant UAC failed to respond and react to Plaintiff's satisfaction. In response, Plaintiff filed the present complaint.

3

## ANALYSIS

### Truth-in-Lending Act (Counts I(1) and C)

Congress enacted TILA "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair billing and credit card practices." 15 U.S.C. § 1601(a); *see also Walker v. Wallace Auto Sales Inc.*, 155 F.3d 927, 932 (7th Cir. 1998). In keeping with this purpose, TILA requires creditors to clearly disclose finance terms under the credit transaction. *See* 15 U.S.C. § 1638(a). Despite its broad purpose of protecting consumers from being misled about the cost of credit, TILA "is not a general prohibition of fraud in consumer transactions or even in consumer credit transactions." *Gibson v. Bob Watson Chevrolet-Geo, Inc.*, 112 F.3d 283, 285 (7th Cir. 1997).

Under its authority "to elaborate and expand the legal framework governing commerce in credit" and pursuant to TILA, the Federal Reserve Board implemented governing regulations, commonly known as Regulation Z. *See Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980); 12 C.F.R. § 226 (1999). These regulations mandate the disclosures be made clearly and conspicuously in writing and include, among other things, the amount financed, the finance charge, the annual percentage rate, total of payments, and total sale price. *See* 12 C.F.R. § 226.17(a), 226.18(b)(d)(e)(g)(j).

In the present case, Plaintiff alleges Defendant Joliet Dodge violated TILA by failing to give Plaintiff proper disclosures in a form Plaintiff could keep prior to consummation of the transaction. Compl. ¶ 10, 24. Defendant responds it fulfilled its obligations under TILA, but even if Plaintiff can establish a technical violation, he cannot establish statutory or actual damages upon which relief may be granted.

Plaintiff's allegation pleads the bare minimum required to state a claim for a TILA violation. 16 U.S.C. § 1638(b)(1)("Form and Timing of Disclosures"); *see Janikowski v. Lynch Ford, Inc.*, 210 F.3d 765, 767 (7th Cir. 2000); *Polk v. Crown Auto Inc.*, 221 F.3d 691, 692 (4th Cir. 2000). Defendant Joliet Dodge cites

a recent case from the Eastern District of Virginia to challenge *Polk*. *Bradley Nigh v. Koons Buick Pontiac GMC, Inc.*, No. Civ. A. 00-1634-A, 2001 WL 432224, at *9-10 (E.D. VA. April 20, 2001). The court in *Nigh* held *Polk* does not state the RIC cannot be the document the purchaser may keep for rate comparison shopping, i.e. the RIC alone may fulfill the TILA requirements. "(G)iving a buyer the credit terms on the form that he is to sign complies with the timing requirements of the Act. ... The *Polk* court's goal was to clarify the timing issue of the statute, not to clarify the form of the disclosure (e.g. in the form of the RISC to be signed as opposed to in a separate writing)." *Nigh*, 2001 WL 432224, at *9 -10. While this Court finds the reasoning in *Nigh* persuasive, the *Nigh* court had a motion for summary judgment before it and relied in large part upon the plaintiff's deposition testimony and other discovery. Here, the Court has before it a motion to dismiss, with a significantly different standard of review, and the Court cannot say under this limited statement of facts, if proved, that Defendant Joliet Dodge's actions and inactions would not be a violation of TILA. At this stage in the proceedings, Plaintiff has adequately put Defendant on notice as to the claim for actual damages.

Concerning actual and statutory damages, to establish a TILA claim, Plaintiff must plead damages. *Brown v. Payday Check Advance, Inc.*, 202 F.3d 987 (7th Cir. 2000). Defendant asserts the TILA claim should be dismissed because Plaintiff failed to plead actual damages and is ineligible for statutory damages. Plaintiff adequately alleged actual damages. Compl. ¶29-31, 32(a)(1), 45-48, 48(a)(1). However, Plaintiff failed to plead statutory damages. 15 U.S.C. § 1640(a)(2).

Although TILA provides for both actual and statutory damages, statutory damages are limited to certain circumstances. Section 1640 contains a provision limiting recovery of statutory damages to certain types of violations. It provides:

> [I]n connection with the disclosures referred to in section 1638 of this title, a creditor shall have limited liability determined under paragraph (2) only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) [which provides for statutory damages] only for failing to comply with the requirements of section 1635 of this title or of paragraph (2) (insofar as it requires disclosure of the "amount financed"), (3), (4), (5),

(6), or (9) of section 1638(a) of this title....

15 U.S.C. § 1640(a)(4). This provision has been interpreted to mean a TILA plaintiff may recover statutory damages only if the defendant violated Sections 1635, 1638(a)(2), or any other listed subsection of 1638(a). *Grant-Davis v. Toyota on Western Inc.*, No. 95 C 0043, 1995 WL 124128, at *9 (N.D. Ill. 1995). The Seventh Circuit made clear the statute confines statutory damages to this closed list and Plaintiff must allege a violation which is eligible for statutory damages in order to recover. *Brown*, 202 F.3d at 991. Further, the Seventh Circuit stated explicitly plaintiffs may not use "back door" theories to wedge their inapplicable facts into § 1640(a). *Id.* "Congress included some and excluded others; plaintiffs want us to turn this into universal inclusion, which would rewrite rather than interpret § 1640(a)." *Id.* Here, Plaintiff has alleged a violation of § 1638(b)(1), which is not one of the enumerated statute sections eligible for statutory damages; thus, Plaintiff has not pleaded statutory damages for the TILA violation. Therefore, the Court GRANTS Defendants' motion to dismiss Plaintiff's prayer for statutory relief under TILA. Compl. ¶ 32(b) and ¶ 49(b).

### Illinois Consumer Fraud and Deceptive Business Practices Act (Counts II and D)

In the present case, Plaintiff alleges ICFA class action claims against Defendants arising out of the RIC with Defendant Joliet Dodge and an alleged lack of TILA disclosures and individual claims against Defendants based upon these actions as well as the defective odometer.

"Unlike TILA, the ICFA 'does not mandate any particular form or subject of disclosure, but rather is a general prohibition of fraud and misrepresentation." *Greisz v. Household Bank (Illinois)*, 8 F. Supp.2d 1031, 1043 (N.D. Ill. 1998) (citing *Lanier v. Associates Finance, Inc.*, 499 N.E.2d 440, 447 (Ill. 1986)). To prove a violation of the ICFA, Plaintiff must allege (1) Defendant engaged in a deceptive act or practice; (2) Defendant intended that Plaintiff rely on that deception; (3) the deception occurred in the course of conduct involving trade or commerce; and (4) the act proximately caused damage. *Williams v. Thomas Pontiac, Inc.*, No. 99 C 882, 1999 WL 787488, at *3 (N.D.Ill. Sept. 24, 1999) (citing *B. Sanfield, Inc.*

6

*v. Finlay Fine Jewelry Corp.*, 168 F.3d 967, 970-71 (7th Cir.1999)). Because TILA and Regulation Z are laws administered by the Federal Reserve Board, a "defendant's compliance with the disclosure requirements of the Truth in Lending Act is a defense to liability under the Illinois Consumer Fraud Act." *Lanier*, 499 N.E.2d at 447.

<u>TILA-derived claims (Complaint ¶35(a), 51(a))</u>

In Count II, ¶35(a), and Count D, ¶51(a), Plaintiff alleges Defendant Joliet Dodge's failure to provide him with the requisite TILA disclosures prior to the consummation of the transaction, as stated above, serves as an unfair and deceptive act under ICFA.

Defendant Joliet Dodge argues Plaintiff may not recover under ICFA for an alleged TILA violation that is already addressed by both TILA and MVRISA. Defendant cites a single case to support its theory and that case is inapplicable to the present facts. *Perez v. Z Frank Oldsmobile, Inc.*, 223 F.3d 617 (7th Cir. 2000).

In *Perez*, the Seventh Circuit held the Illinois odometer fraud statute established the maximum amount that may be awarded for a vehicle's mileage, and the car buyer could not circumvent the statute to obtain a punitive award in excess of the statutory maximum, simply by joining the statutory claim with a common law fraud claim based upon the same deception. *Id.* at 624. Further, the car buyer could recover punitive damages under the common law only if the car dealer made additional misrepresentations not covered by the odometer fraud statute. *Id.* Defendant argues the holding in *Perez* prohibits Plaintiff from alleging causes of action for TILA, MVRISA and ICFA. Defendant is mistaken. The court in *Perez* stated when a statute provides for punitive awards (e.g. tripling of actual damages under the Illinois Odometer Act), a plaintiff may not bypass the legislature's intent by obtaining common law punitive damages. *Id.* "What point would the statutes serve if in the end the common law of fraud were the effective authority to award damages ?" *Id.* The present matter concerns the proper pleading of causes of actions, not the correct determination of damage awards per *Perez*. Plaintiff may derive an ICFA claim

7

from the facts surrounding its TILA claim. Thus, Defendant's objections are premature; Plaintiff eventually has to select his remedies, and if that time arrives, the holding in *Perez* will be applicable. Until then, Plaintiff may plead for relief in the alternative. Fed. R. Civ. P. 8(a). Therefore, the Court DENIES Defendants' motion to dismiss the ICFA claims derived from alleged TILA violations. Compl. ¶35(a), 51(a).

Defendant UAC argues Defendant Joliet Dodge's failure to show Defendant Joliet Dodge adequately complied with TILA's disclosure requirements does not automatically hold Defendant UAC liable. Under 15 U.S.C. § 1641(a), an assignee is liable for TILA violations only where the violation is apparent on the face of the documents assigned. *See Walker*, 155 F.3d at 936; *Taylor v. Quality Hyundai, Inc.*, 150 F.3d 689, 692-93 (7th Cir.1998); *Rivera v. Grossinger Autoplex, Inc.*, No. 00 C 442, 2000 WL 796158, at *4 (N.D.Ill. June 19, 2000). "For the purposes of this section, a violation apparent on the face of the disclosure includes, but is not limited to (1) a disclosure which can be determined to be incomplete or inaccurate from the face of the disclosure statement or other documents assigned ..." 15 U.S.C. § 1641(a). Defendant UAC maintains even if Defendant Joliet Dodge violated TILA by not providing Plaintiff a copy of the requisite disclosures, Defendant UAC cannot be liable because the violation was not apparent on the face of the documents Defendant Joliet Dodge assigned to it. Defendant UAC's analysis is correct. The alleged disclosure violation at issue here involves only when the TILA disclosures were made by Defendant Joliet Dodge and are not the type of disclosure violations which are "apparent on the face." *Id.* After the buyer signs a RIC and the seller/initial creditor assigns a fully executed RIC to an assignee, the assignee cannot review the "four corners" of the "document assigned" to determine if the buyer received TILA disclosures preconsummation or ascertain the number of copies of the RIC which were in the buyer's packet. *See Walker*, 155 F.3d at 936; *Taylor*, 150 F.3d at 694. Further, Plaintiff attempts to avoid the limitation on assignee under Section 1641(a) by asserting "on information and belief" that Defendant UAC had "actual knowledge" of certain "facts." From these purported facts, Plaintiff

concludes Defendant UAC's knowledge of Plaintiff's alleged failure to receive timely TILA notices from Defendant Joliet Dodge. However, the inquiry under Section 1641(a) is not concerned with the assignee's "knowledge." For the assignee to be subject to ICFA liability here, the purported TILA violation must be apparent from the face of the assigned contract. *Id.*; *see also Ramadan v. Chase Manhattan Corp.*, 229 F.3d 194, 199 (3rd Cir. 2000). Plaintiff's TILA claim, i.e. the timing of the receipt of TILA disclosures, is not the type of asserted TILA violation that can satisfy this "apparent on the face" standard. Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from alleged TILA violations as they apply to Defendant UAC. Compl. ¶ 35(a), 51(a).

### MVRISA-derived claims (Complaint ¶35(b)-(c), 51(b)-(c))

In Count II, ¶35(b) and (c), and Count D, ¶51(b) and (c), Plaintiff alleges Defendants previously and presently violated the Illinois Motor Vehicle Retail Installments Sales Act (MVRISA) and therefore committed misleading and deceptive acts under ICFA. [2]

Section 2E of the ICFA provides that a MVRISA violation also constitutes an ICFA violation when three or more MVRISA violations, "as determined in any civil or criminal proceeding," have been committed by the violator in the same calendar year. 815 ILCS 505/2E. Based solely "on information and belief," Plaintiff alleges Defendant Joliet Dodge has such multiple convictions or violations and should thus be held liable under the fraud statute. However, the mere allegation of the single violation is insufficient.

Federal Rule of Civil Procedure 9(b) requires that "[i]n all averments of fraud ... the circumstances constituting the fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). The Seventh Circuit has stated clearly that Rule 9(b) requires a plaintiff to state "with particularity" any "circumstances constituting fraud." *Id.* "Although the states of mind may be pleaded generally the 'circumstances' must

---

[2] Plaintiff states ICFA § 2E claims against Defendant Joliet Dodge only, i.e. the complaint asserts no claim against Defendant UAC. (Compl. ¶ 35(b); Pl.'s Resp. to Def. UAC's Mot. Dismiss at 4, n.1.)

be pleaded in detail. This means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Thus, Plaintiff must plead the time, place and content of the allegedly fraudulent misrepresentation, as well as the parties to that communication. *Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050 (7th Cir.1998); *see also Taylor v. Bob O'Connor Ford, Inc.*, No. 97 C 720, 2000 WL 876920, at *2 (N.D.Ill. June 29, 2000). Further, a plaintiff must plead a complaint alleging a violation of the ICFA with the same level of particularity and specificity as that required under common law fraud. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996). In the present matter, a review of Plaintiff's third amended complaint reveals it inadequately sets forth a claim for violation of the ICFA based upon a violation of Section 2E. Plaintiff's assertion alone is insufficient to sustain a fraud cause of action; Plaintiff must cite the actual court decisions wherein Defendant was found to have violated the MVRISA. "A single violation of the Retail Installment Sales Act is not per se a violation of the Consumer Fraud Act. If it were, there would be little reason for the limitations imposed by sections 2E and 2F of the Consumer Fraud Act." *Weather-Seal-Nu-Sash, Inc., v. Marx*, 596 N.E.2d 780, 782 (3rd Dist. 1992)(referring to *Lanier*, 499 N.E.2d at 448 (Simon, J., concurring)). While the Court is cognizant of the traditional pleading standards, Plaintiff's failure to identify these three prior convictions and/or violations is fatal to his Section 2E fraudulent or deceptive practices claim. Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from alleged unnamed MVRISA violations. Compl. ¶ 35(b), 51(b).

Section 2F of the ICFA provides that "any person who is held in any civil or criminal proceeding to have willfully and materially violated" MVRISA is also guilty of an unlawful act under the ICFA. 815 ILCS 505/2F. Thus, a plaintiff may use a prior MVRISA conviction or violation to support an ICFA cause of action. However, only the Attorney General or the State's Attorney may bring an action for a violation of MVRISA; a private action under the ICFA depends upon the findings of the suit brought under MVRISA. *Tirado v. Z Frank, Inc.*, 522 F.Supp. 405, 408 (N.D.Ill. 1981); *Hoover v. May Department*

*Stores Co.*, 395 N.E.2d 541, 545-46 (Ill. 1979); *McCoy v. MTI Vacations, Inc.*, 650 N.E.2d 605, 607-08 (1st Dist. 1995). Thus, a court must have previously held Defendants had "wilfully and materially" violated MVRISA if a plaintiff wishes to plead a ICFA claim under Section 2F. Further, unlike Section 2E, multiple violations of MVRISA are not required. "Under section 2F of the Consumer Fraud Act, a single [MVRISA] violation may constitute a Consumer Fraud Act violation if the [MVRISA] violation was 'willful' and 'material.'" *Weather-Seal-Nu-Sash, Inc.* 596 N.E.2d at 782; *see Fidelity Financial Services, Inc. v. Hicks* 574 N.E.2d 15 (Ill. 1991). While multiple violations are not necessary under Section 2F, a plaintiff must cite to the prior single MVRISA conviction and/or violation in its pleading when it is filing its ICFA cause of action. *Fidelity Financial Services, Inc.* 574 N.E.2d at 20; *DiLeo*, 901 F.2d at 627; *Taylor*, 2000 WL 876920 at *2. Here, the third amended complaint fails to indicate any court has found Defendants have committed wilful and material violations of MVRISA. Thus, the Court concludes Plaintiff has failed to state a cause of action under the ICFA based upon a purported MVRISA violation. "Mere assertions of wilful and material violations of MVRISA are not adequate to obtain relief under the CFA." *Tirado*, 522 F.Supp. at 408; *see also Smith v. Sears Roebuck & Co.*, 419 N.E.2d 673 (4th Dist. 1981). Therefore, the Court GRANTS Defendants' motion to dismiss the ICFA claims derived from an alleged unnamed MVRISA violation. Compl. ¶35(c), 51(c). Consequently, Defendant UAC is dismissed from Count II.

### Credit Report and Buyers Guide claims (Complaint ¶51 (g) and (i))

In Count D, ¶ 51(g), Plaintiff asserts Defendant Joliet Dodge "and/or" UAC "have caused information pertaining to the delinquency of Mr. Crowe to be placed in the (sic) Mr. Crowe's credit report" and thus performed an unfair and deceptive act under ICFA. In Count D, ¶51(i), Plaintiff alleges Defendant Joliet Dodge failed to provide him with the federally-required Buyers Guide. Plaintiff's assertion regarding the credit report does not state a consumer fraud claim. Rather, it merely alleges a breach of contract action and Illinois courts, apparently suspicious of the motives of plaintiffs' attorneys'

fees, repeatedly caution against transforming every breach of contract into consumer fraud. *Long v. Wix Auto*, No. 00 C 5842 (N.D.Ill January 4, 2001) (Mot. to Dismiss Op.)(Judge Zagel); *Golembiewski v. Hallberg Ins. Agency*, 635 N.E.2d 452, 460 (1ˢᵗ Dist. 1994). "Every individual breach of contract between two parties... does not amount to a cause of action cognizable under the (ICFA)... If the (ICFA) did apply, then common law breach of contract actions 'would be supplemented in every case with an additional and redundant remedy.'" *Golembiewski*, 635 N.E.2d at 121 (quoting *Exchange National Bank v. Farm Bureau Life Ins. Co*, 438 N.E.2d 1247, 1250 (Ill. 1982)). However, the complaint adequately pleads an ICFA claim concerning the purported failure to provide a Buyers Guide; further, the claim raises factual issues that should not be decided on a motion to dismiss. *Sorce v. Naperville Jeep Eagle, Inc.*, 722 N.E.2d 227, 232 (2ⁿᵈ Dist. 1999). Therefore, the Court GRANTS Defendants' motion to dismiss the credit reporting claim, Compl. ¶ 51(g), and DENIES the motion to dismiss the Buyers Guide claim, Compl. ¶ 51(i).

<u>APR representation (Complaint ¶51(j))</u>

In Count D, ¶ 51(j), Plaintiff asserts Defendant Joliet Dodge's finance person "affirmatively represented" to Plaintiff he would try and find the best interest rate, and "acting as Mr. Crowe's agent and fiduciary on this undertaking," he failed to deliver the lowest rate available to Plaintiff. Defendant states correctly it was not required to secure the lowest rate for Plaintiff. However, Plaintiff maintains Defendant offered to secure such a rate and this material misrepresentation offends the ICFA.

The Seventh Circuit recently held a car dealer generally does not act as the customer's agent when arranging financing and, therefore, does not owe a duty to the customer to act in his or her best interest. *Balderos v. City Chevrolet*, 214 F.3d 849, 853 (7ᵗʰ Cir. 2000). However, this relationship between buyer and seller must be evaluated on an individual basis.

> (A)n automobile dealer is not its customers' agent, obviously not in selling cars but only a little less obviously in arranging financing. If the buyer pays cash and arranges his own financing, the dealer is not in the picture at all. If the buyer wants to buy on credit, he recognizes that his decision does not change the arms' length nature of his relation to the dealer. He knows, or at least has no reason to doubt, that the dealer seeks a profit on the

financing as well as on the underlying sale. This is in general, not in every case; it is a question of fact whether the contract express or implied between a particular dealer and a particular customer constitutes the former an agent for the latter in procuring financing.

*Id.*; *see also American Ins. Corp. v. Sederes*, 807 F.2d 1402, 1405-06 (7th Cir.1986).

As pleaded, there is no basis to hold Defendant Joliet Dodge as a fiduciary. The complaint fails to suggest Defendant agreed to serve as Plaintiff's agent in dealing with a finance company; instead, Plaintiff concludes Defendant was "in essence, acting as Mr. Crowe's agent and fiduciary in this undertaking." Compl. ¶51(j). However, since questions of fact should not be decided on a motion to dismiss, the Court will allow this issue to be pursued during discovery and allow Defendant to raise it again on summary judgment, if it so chooses. *Sorce*, 722 N.E.2d at 232. Therefore, the Court DENIES Defendants' motion to dismiss the claim of misrepresenting the APR. Compl. ¶51(j).

### Documentary fee representation (Complaint 51(l) and (m))

In Count D, ¶51(l) and (m), Plaintiff alleges Defendant Joliet Dodge's RIC form misrepresented the documentary fee would be paid to others when the fee would actually be retained by Defendant, ¶ 51(l), and the documentary fee was pre-printed on the form, ¶ 51(m), and thus violated the ICFA.

The documentary fee is listed under the sub-heading "Amount Paid to Others for You * WE MAY BE RETAINING A PORTION OF THIS AMOUNT".[3] Plaintiff maintains this sub-heading is false, i.e. no amount of the documentary fee was paid to others, and thus Defendant deceived him. However, Plaintiff's theory lacks merit. The sub-heading clearly states a total amount will be paid to third parties and Defendant notes with an asterisk the amount it retains. The documentary fee is so noted with an asterisk and thus the buyer knows the fee is such a retained amount.

Plaintiff relies upon *Pawlikowski v. Toyota Motor Credit Corp.*, 722 N.E.2d 767, 775 (2nd Dist.

---

[3] In its response to Defendant Joliet Doge's motion to dismiss, Plaintiff misquotes this sub-heading as "Amounts Paid to Others for You." This mistake is relevant, as the actual heading states a singular amount which reflects a total or collective fund.

1999), to support its proposition. However, Plaintiff selectively quotes *Pawlikowski* and twists the Appellate Court's analysis. In that case, the Second District found its facts similar to *Martin v.Heinhold Commodities, Inc.*, 643 N.E.2d 734 (Ill. 1994), where the Illinois Supreme Court held the defendant actively misrepresented on a commodities disclosure statement both the purpose and recipient of the charges collected from the plaintiff. *Id.* In the present case, Plaintiff fails to suggest any such active deception; rather, the captions on the RIC identify both the actual purpose and recipient of the fees. Further, the MVRISA authorizes car sellers to collect documentary fees, specifically allowing a seller in a RIC to "add a 'documentary fee' for processing documents and performing services related to closing of a sale." 815 ILCS 375/11.1. Defendant charged $48.82 for the documentary fee; the maximum fee permitted for FY 2000 was $50.48, as set by the Illinois Attorney General.

Plaintiff's allegations concerning the documentary fee are unfounded; the RIC openly and clearly itemizes the fees for licenses, titles, taxes and documentary fees and Plaintiff fails to explain how this is misleading or unfair. Therefore, the Court GRANTS Defendants' motion to dismiss the claims of misrepresenting the documentary fee. Compl. ¶ 51(l) and (m).

### Vehicle's mileage representation (Complaint ¶51(n))

In Count D, ¶51(n), Plaintiff alleges when Defendant Joliet Dodge signed the odometer disclosure statement it misrepresented the actual mileage of the car and deceived Plaintiff. Defendant argues again that the Seventh Circuit's holding in *Perez v. Z Frank* applies. *Perez*, 223 F.3d at 624. However, as stated above, the Court believes *Perez* goes to selecting remedies, not pleading a cause of action, and thus does not apply at the present time. Plaintiff has adequately plead a cause of action based upon deception or fraud. Therefore, the Court DENIES Defendants' motion to dismiss the claim of misrepresenting the car's mileage. Compl. ¶ 51(n).

### Rejection or Revocation (Counts F, G and O)

In Counts D (¶51(d)), F, G and O, Plaintiff alleges he attempted to reject or revoke acceptance of

the defective car, but Defendant Joliet Dodge would not honor Plaintiff's rejection or revocation. Defendant argues the rights of rejection and revocation are not causes of actions, but instead are remedies; thus, Defendant maintains they should be dismissed as claims and instead reserved as prayers for relief.

Defendant correctly categorizes rejection and revocation as buyer's rights upon improper delivery. 810 ILCS 5/2-601 *etal*. However, these rights may convert to legitimate causes of action when a defendant has denied them as remedies earlier, i.e. the dishonor of rejection or revocation creates a separate claim. *Buechin v. Ogden Chrysler-Plymouth, Inc.*, 511 N.E.2d 1330, 1338 (2nd Dist. 1987); *Presto Manufacturing Co., Inc., v. Formetal Engineeing Co.*, 360 N.E.2d 510, 513-14 (2nd Dist 1977)[4]; *Breitung v. Canzano*, 660 N.Y.S.2d 765, 766 (N.Y. App. Div 1997). Since the timeliness and reasonableness of Plaintiff's rejection and/or revocation are fact questions, the Court will not decide these issues on a motion to dismiss. Further, Plaintiff alleged he wrote Defendant UAC to inform it of Defendant Joliet Dodge's inaction and Defendant UAC similarly refused to honor Plaintiff's rejection and/or revocation. Compl. ¶51(o). These claims require factual discovery; Defendant will be permitted to renew its challenges on summary judgment. *Sorce*, 722 N.E.2d at 232. Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's causes of action for rejection and revocation in Counts D (¶ 51(n) and (o)), F, G, and O.

### Breach of Implied Warranty of Merchantability under Magnuson-Moss (Counts D and H)

In Counts D, ¶51(h) and (p), and Count H, Plaintiff alleges Defendant Joliet Dodge violated the Magnuson-Moss Act when it attempted to waive the implied warranty of merchantability in the RIC at the same time it sold Plaintiff a service contract (¶51(h)) and when Defendant was unable to repair the car pursuant to the warranty (¶51(p) and Count H).

---

[4] Plaintiff cites *Presto* for support, but incorrectly states it stands for "approving pleading rejection and revocation of acceptance as counterclaims." Pl.'s Resp. to Def. UAC Mot. To Dismiss at 27. The Appellate Court stated repeatedly rejection and revocation were defenses, rather than counterclaims. *Id.* at 514. The distinction reflects the challenge in understanding these concepts in the present matter.

Defendant's Buyers Order form plainly disclaims the warranty of merchantability. However, the Magnuson-Moss Act prohibits disclaimers of the implies warranty of merchantability when the supplier inters into a service contract with the purchaser. 15 U.S.C. § 2308(a)(2). Here, Defendant Joliet Dodge sold Plaintiff a service contract and was the party to the service contract. Thus, Plaintiff has sufficiently pleaded a claim as to fulfill its notice pleading requirement. Therefore, the Court DENIES Defendants' motion to dismiss Plaintiff's causes of action for breaches of the Magnuson-Moss Act in Counts D (¶51(h) and (p)) and H.

## Illinois and Federal Odometer Acts (Counts I(I), J and P)

In Counts I (I), J[5] and P, Plaintiff alleges Defendant Joliet Dodge provided him with a false odometer statement of the car's mileage and failed to disclose the car's actual, higher mileage, thus violating the federal and Illinois odometer statutes. 49 U.S.C. § 32705; 625 ILCS 5/3-112.1(e). Defendant argues Plaintiff failed to allege Defendant possessed the requisite knowledge component and thus failed to state a claim. Plaintiff alleged Defendant acted "with intent to defraud" and such pleading is sufficient to sustain the odometer statute actions. The parties' factual disputes merit and require discovery. For instance, the origin of the defective odometer and the facts surrounding it are sufficiently in dispute that a motion to dismiss is precluded. *Sorce,* 722 N.E.2d at 232; *See Holley v. Gurnee Volkswagen and Oldsmobile, Inc.,* No. 00 C 5316, 2001 WL 243191, at *3 (N.D.Ill. Jan. 4, 2001). Therefore, this court cannot say under this set of facts, if proved, that Defendant's actions and inactions would not be a violation of the odometer acts. At this stage in the proceedings, Plaintiff has adequately put Defendant on notice as to the claims. Therefore, the Court DENIES Defendants' motion to dismiss the claims under the Illinois and federal odometer acts under Counts I(I), J and P.

---

[5] Plaintiff withdrew its allegations in ¶ 63(a) and 65(a): "(Defendant Joliet Dodge) altered or caused to be altered the odometer of the car with the intent to change the numbers of miles thereon".

### Common Law Fraud under Illinois law (Count L)

In Count L, Plaintiff incorporates the above facts and alleges common law fraud. Defendant argues Plaintiff has failed to state a fraud with the requisite detail. As stated above, while the federal courts require notice pleading, allegations of fraud must be plead further with sufficient particularity. Fed. R. Civ. P. 9(b).

While Plaintiff appears to have simply slapped a cause of action for common law fraud onto the end of his complaint, throughout his complaint he has stated the necessary level of detail required to sustain the claim. *See* ¶11, 18, 51(j). For instance, to support the allegations of deception concerning the financing of the vehicle and the best available APR, Plaintiff alleged the name of Defendant's employee, what he said and when he said it. For the allegation of deception concerning the malfunctioning odometer, Plaintiff again stated the employee's name, the content of their conversation and when the conversation occurred. Therefore, the Court DENIES Defendants' motion to dismiss the common law fraud claims under Count L.

### Ratification and Acceptance of Illegal Conduct and/or Fraud (Count M)

In Count M, Plaintiff alleges Defendant UAC became aware of Defendant Joliet Dodge's allegedly deceptive conduct when it received Plaintiff's letter; Defendant UAC's inaction ratified this conduct and Defendant accepted the benefits of Defendant Joliet Dodge's illegal conduct and/or fraud. Defendant UAC argues "Ratification and acceptance of illegal conduct and/or fraud" are not causes of action, but rather remedies.

In violation of Rule 53 of the Local Rules of the Seventh Circuit Court of Appeals, Plaintiff cites an unpublished opinion to support his theory.[6] *Neece v. John Hancock Mutual Life Ins.* Co., 914 F.2d 260

---

[6] In a footnote, Plaintiff states the case is not offered for its "precedential value, but rather for its thorough discussion of Illinois law." If this were true, then Plaintiff simply would have analyzed and applied the cases cited within this unpublished opinion. Further, Plaintiff would not have discussed the facts of the case or quoted from it.

(7th Cir. 1990). In *Neece*, the Seventh Circuit discussed ratification as the law of principal and agent, i.e. the adoption and confirmation by the principal of an act or contract performed or entered into by the agent, and similarly discussed retention of benefits. *Id.* However, the court addressed these "claims" as theories of recovery in the contract dispute before it, specifically, as strategies for secondary liability, not an independent cause of action. *Id.; see also Zekman v. Direct American Marketers*, 695 N.E.2d 853, 859 (Ill. 1998) ("Knowingly receiving the benefits of another's fraud... more closely resembles a form of secondary liability.") Plaintiff cites a number of cases which define and discuss agency theory, but none of these cases support his assertion there are independent causes of action for "ratification" or "acceptance of the benefits of fraud." Further, the Illinois Supreme Court stated unambiguously the ICFA does not prohibit acceptance of the benefits of fraud.

> (T)he plain language of section 2 of the (ICFA) does not include anything that makes it unlawful to knowingly receive the benefits of another's fraud. As this court stated in *Laughlin v. Evanston Hospital*, '(t)he language of the (ICFA) shows that its reach was to be limited to conduct that defrauds or deceives consumers or others.' To allow plaintiff to recover for (defendant) knowingly receiving the benefits of (another defendant's) fraud would require us to read into the statute violations that are not a part of the statutory text. ... (W)e cannot extend liability to those who knowingly receive the benefits of another's fraud.

*Zekman*, 695 N.E.2d at 859 (citing *Laughlin v. Evanston Hospital*, 550 N.E.2d 986 (1990)).

"Under *Zekman*... 'knowingly receiving the benefits of another's fraud' does not violate the ICFA. Rather, the statute covers only 'actions directly done by the perpetrator of the fraud.'" *Vance v. National Benefit Assoc.*, No. 99 C 2627, 1999 WL 731764, at *5 (N.D.Ill. Aug. 30, 1999) (quoting *Zekman*, 695 N.E.2d at 859). Here, the complaint fails to allege sufficient direct involvement by Defendant UAC; Defendant UAC's only involvement was that the RIC was assigned to it after Plaintiff entered into the transaction. *Id.* While Plaintiff wrote a letter to Defendant UAC, its nonresponsiveness falls short of direct approval and authorization of the allegedly deceptive activity. *See also Franks v. Rockenbach Chevrolet Sales, Inc.*, No. 95 C 6266, 1998 WL 919714, at *2-5 (N.D.Ill,. Dec. 30, 1998). Therefore, the

Court GRANTS Defendants' motion to dismiss the claims for "ratification and acceptance of illegal conduct and/or fraud" under Count M.

## Illinois Sales Finance Agency Act (Count N)

In Count N, Plaintiff alleges the RIC violated the SFAA on its face and Defendant UAC purchased this RIC. Defendant states there is no private cause of action and both parties agree that non-liability under TILA is a complete defense. Thus, since Defendant UAC was dismissed from the TILA-derived ICFA claims above for a lack of assignee liability on the face of the relevant document, this claim is dismissed. Further, contrary to Plaintiff's arguments, there is no private cause of action under Section 8.4 of the SFAA, the section upon which Plaintiff relied to support his claim. 205 ILCS 660/8.4. Section 8.4 delineates the criteria for the Illinois Department of Financial Institutions to evaluate applications for a license, requests for a renewal of a license, or efforts to suspend a license. The section does not list prohibited activities which empower a private citizen with a right of action under the SFAA. The Court finds the analysis and conclusion in a recent Northern District of Illinois case illustrative. *Rivera v. Grossinger Autoplex, Inc.*, No. 00 C 442, 2000 WL 796158, at *6 (N.D.Ill. June 19, 2000). In *Rivera*, the court concluded "the cause of action created in § 15.5 (of the SFAA) does not authorize a private cause of action for engaging in conduct described in § 8.4." *Id.* As in the present case, the court in *Rivera* held the plaintiff's argument that a private right of action exists for asserted violations of Section 8.4 "is without support in either the language of the statute or case law." *Id.* Therefore, the Court GRANTS Defendants' motion to dismiss the SFAA claims under Count N.

## Plaintiff's motion for injunctive relief and declaratory judgment

In his petition for injunctive relief and declaratory judgment, Count D ( ¶51(e)) and Count K, Plaintiff alleges Defendant Joliet Dodge violated the Credit Services Organizations Act (CSOA). Defendant argues car dealerships are not "credit services organizations" and the provisions of the CSOA do not apply to Defendant.

The Court explained recently why it is presently accepting the proposition the CSOA applies to car dealerships, and thereby, Defendant Joliet Dodge may be held liable for the alleged failure to comply with its requirements as a matter of law. *Harris v. Castle Motor Sales, Inc.*, No. 00 C 5455, 2001 WL 477241 (N.D.Ill May 4, 2001). The Court will repeat its analysis and conclusion below.

When a federal court applies state law, it should attempt to resolve the issue before it as if it were the highest court of the state that provides the state law. *Stephan v. Rocky Mountain Chocolate Factory, Inc.*, 129 F.3d 414, 416-17 (7th Cir.1997); *Allen v. Transamerica Ins. Co.*, 128 F.3d 462, 466 (7th Cir.1997). Thus, this court must attempt to predict how the Illinois Supreme Court would decide the matter. *Id.* (citing *Smith v. Equitable Life Assurance Soc'y*, 67 F.3d 611, 615 (7th Cir.1995)). However, if an Illinois Appellate Court has ruled on this issue, while not automatically binding, the Illinois court decision may control, "unless there are persuasive indications that the Illinois Supreme Court would decide the issue differently." *Id.; see also Knoblauch v. DEF Express Corp.*, 86 F.3d 684, 687 (7th Cir.1997) (citing *Commissioner v. Estate of Bosch*, 387 U.S. 456, 465, 87 S.Ct. 1776, 1783 (1967)).

The CSOA is an infrequently used and rarely interpreted cause of action, and this court has little direction from Illinois' highest court and certainly no persuasive guidance. While the Illinois Supreme Court has yet to resolve the issue of whether the CSOA is applicable to car dealerships such as Defendant, that Court will soon provide some guidance, as it recently granted leave to appeal the decision of the Illinois Appellate Court, Third District, in *Midstate Siding & Window Co., Inc. v. Rogers*, 309 Ill.App.3d 610, 722 N.E.2d 1156 (Ill.App.Ct.1999); *Midstate Siding Window Co., Inc. v. Rogers*, 189 Ill.2d 661, 731 N.E.2d 765 (Ill.2000). Therefore, this court must exercise its best judgment to determine how the Illinois Supreme Court will rule on this issue.

The Illinois Appellate Court's decision presents plausible authority to hold Defendant liable under the CSOA, and Judge Guzman similarly found that court's logic persuasive in his motion to dismiss opinion in *Jaffi v. Lynch Ford*, No. 99 C 7852 (N.D.Ill Aug. 25, 2000)(minute order). However, this court

is also aware of Judge Holderman's motion for summary judgment ruling in *Fogle v. William Chevrolet/GEO*, No. 99 C 5960, 2000 WL 1129983 (N.D.Ill Aug 9, 2000). Since this is a motion to dismiss and the Illinois Supreme Court presumably will hand down its decision soon, this court will not dismiss this count at this time.

Further, while the Court has granted the first two elements of Plaintiff's petition, i.e. the CSOA provides that credit services organizations must include certain disclosures in their contracts and Defendant Joliet Dodge is a credit services organization, the Court will not grant Plaintiff's request, i.e. the Court does not find Defendant failed to provide the required disclosures and thus violated the CSOA. Such factual conclusions merit discovery and the Court cannot and will not say with this bare statement of facts that Defendant's conduct would violate the CSOA. Therefore, the Court DENIES Defendants' motion to dismiss the petition for injunctive relief and declaratory judgment, Counts D ( ¶51(e)) and Count K. Further, the Court GRANTS in part and DENIES in part Plaintiff's petition for injunctive relief and declaratory judgment.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** in part and **DENIES** in part the Motion to Dismiss. Plaintiff's petition is **GRANTED** in part and **DENIED** in part..

**IT IS SO ORDERED.**
**DATED:** July 17, 2001

WILLIAM J. HIBBLER, DISTRICT JUDGE